17-474
*Copeland v. Vance*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

————————

August Term, 2017

(Argued: January 18, 2018     Decided:  June 22, 2018)

Docket No. 17-474

————————

JOHN COPELAND, PEDRO PEREZ, NATIVE LEATHER LTD.,

*Plaintiffs-Appellants,*

KNIFE RIGHTS, INC., KNIFE RIGHTS FOUNDATION, INC.,

*Plaintiffs,*

—v.—

CYRUS R. VANCE, JR., in his Official Capacity as the New York County District Attorney, CITY OF NEW YORK,

*Defendants-Appellees,*

BARBARA UNDERWOOD, in her Official Capacity as Attorney General of the State of New York,

*Defendant.*\*

————————

\* The Clerk of Court is directed to amend the official caption as set forth above.

---

B e f o r e:

KATZMANN, *Chief Judge*, KEARSE and POOLER, *Circuit Judges*.

---

Two individuals and a retailer appeal from a judgment entered against them following a bench trial in the United States District Court for the Southern District of New York (Forrest, *J*.). They claim that New York's ban on gravity knives is unconstitutionally vague as applied to common folding knives because New York's functional method of identifying illegal knives is inherently indeterminate. We conclude that this is a facial challenge to the gravity knife law and that the challengers have the burden to show that the statute is invalid in all respects. Because the challengers did not show that the statute was unconstitutionally enforced against the retailer in a prior proceeding, we reject their vagueness claim. Accordingly, the judgment of the district court is AFFIRMED.

---

DANIEL L. SCHMUTTER, Hartman & Winnicki, P.C., Ridgewood, NJ, *for Plaintiffs-Appellants*.

ELIZABETH N. KRASNOW, Assistant District Attorney (Patricia J. Bailey, Assistant District Attorney, *on the brief*), New York County District Attorney's Office, New York, NY, *for Defendant-Appellee Cyrus R. Vance, Jr*.

CLAUDE S. PLATTON, Assistant Corporation Counsel (Richard Dearing, Amanda Sue Nichols, Assistant Corporation Counsel, *on the brief*), for Zachary W. Carter, Corporation Counsel of the City of New York, New York, NY, *for Defendant-Appellee City of New York*.

William Gibney, Director, Special Litigation Unit, Criminal Defense Practice, Legal Aid Society, New York, NY, *for Amicus Curiae* Legal Aid Society, *in support of Plaintiffs-Appellants*.

2

> Douglas M. Garrou, Hunton & Williams LLP, Washington, DC, *for Amici Curiae* Profs. Gideon Yaffe, Brett Dignam, Jeffrey Fagan, Eugene Fidell, Stephen Garvey, Heidi Hurd, Douglas Husak, Issa Kohler-Hausmann, Tracy Meares, Gabriel Mendlow, Michael Moore, Stephen Morse, Martha Rayner, Scott Shapiro, Kenneth Simons, James Whitman, and Steven Zeidman, *in support of Plaintiffs-Appellants*.

———————————

KATZMANN, *Chief Judge*:

Plaintiffs-appellants John Copeland, Pedro Perez, and Native Leather, Ltd. (collectively, "plaintiffs") appeal from a judgment against them following a bench trial in the United States District Court for the Southern District of New York (Forrest, *J.*). Plaintiffs claim that New York's ban on gravity knives is void for vagueness under the Due Process Clause of the Fourteenth Amendment as applied to "[k]nives that are designed to resist opening from their folded and closed position," or common folding knives. J. App'x 51. New York law defines a gravity knife as a knife that can be opened to a locked position with a one-handed flick of the wrist. Plaintiffs mainly argue that the statute cannot lawfully be applied to common folding knives because the wrist-flick test is so indeterminate that ordinary people cannot reliably identify legal knives.

Key to deciding this case is determining whether the plaintiffs' vagueness claim should be understood as an as-applied challenge or a facial challenge. Because plaintiffs' claim would, if successful, effectively preclude all enforcement of the statute, and because plaintiffs sought to prove their claim chiefly with hypothetical examples of unfair prosecutions that are divorced from their individual facts and circumstances, we deem it a facial challenge. Plaintiffs therefore must show that the gravity knife law is invalid in all applications, including as it was enforced against them in three prior proceedings. Under this strict standard, the challengers' claim will fail if the gravity knife law was constitutionally applied to any one of the challengers. We conclude that Native Leather did not carry its burden. Accordingly, we affirm the judgment of the district court.

## BACKGROUND

The State of New York prohibits the possession of a "gravity knife," which is defined as "any knife which has a blade which is released from the handle or sheath thereof by the force of gravity or the application of centrifugal force which, when released, is locked in place by means of a button, spring, lever or other device." N.Y. Penal Law §§ 265.01(1), 265.00(5) ("gravity knife law"). The

4

law, originally passed in 1958, remains unchanged today.[1] The gravity knife law

employs a functional, rather than design-based, definition. A knife is a gravity

knife if it operates as one—the blade must "release[] from the handle" by gravity

or by "the application of centrifugal force" and then "lock[] in place"—even if

the manufacturer did not design it to do so. *Id.* § 265.00(5); *see People v. Neal*, 913

N.Y.S.2d 192, 194 (1st Dep't 2010) (finding proof sufficient where "[t]he officer

demonstrated in court that he could open the knife by using centrifugal force,

created by flicking his wrist, and the blade automatically locked in place after

being released"). Some other banned weapons are defined by their design. *See,*

*e.g.*, N.Y. Penal Law § 265.00(15-b) ("'Kung Fu star' means a disc-like object with

sharpened points on the circumference thereof and is designed for use primarily

as a weapon to be thrown.").

Knowledge that a knife responds to the wrist-flick test is not an element of

this crime. *See People v. Parrilla*, 27 N.Y.3d 400, 402 (2016) ("[T]he mens rea

prescribed by the legislature for criminal possession of a gravity knife simply

---

[1] At least for now. The Governor of New York recently vetoed two attempts to amend the gravity knife law, one of which would have used a design-based definition, and the other of which would have eliminated the centrifugal force clause.

5

requires a defendant's knowing possession of a knife, not knowledge that the knife meets the statutory definition of a gravity knife."). Possessing a gravity knife is a misdemeanor offense, but it can be charged as a felony if the offender has previously been convicted of a crime. *See id.* at 404 & n.2.

To determine whether a knife is a gravity knife, police officers and prosecutors "us[e] the force of a one-handed flick-of-the-wrist to determine whether a knife will open from a closed position," a method known as the wrist-flick test. *Copeland v. Vance*, 230 F. Supp. 3d 232, 238 (S.D.N.Y. 2017). Officers are trained in the wrist-flick test at the Police Academy, and each of the officers involved in the events giving rise to this case received this training. "[A]rrests and prosecutions for possession of a gravity knife only occur once a knife has opened in response to the Wrist-Flick test." *Id.* at 242. "[T]he same Wrist-Flick test has been used by the NYPD to identify gravity knives since the statute's effective date" and continuing to the present. *Id.* The district court found that "the evidence supports a known, consistent functional test for determining whether a knife fits the definition of a 'gravity knife' and does not support inconsistent outcomes under that test." *Id.*

John Copeland is an artist who lives in Manhattan. In the fall of 2009, Copeland bought a folding knife at a Manhattan retailer and asked two police officers whether the knife was legal. When neither officer could open the knife with the wrist-flick test, they told him it was. Copeland regularly used the knife over the next year. In October 2010, two police officers stopped Copeland when they saw the knife clipped to his pocket. One of the officers applied the wrist-flick test, and the knife fully opened to a locked position on the first attempt. Copeland was arrested and charged with violating the gravity knife law. He later agreed to an adjournment in contemplation of dismissal of the charge.

Pedro Perez is an art dealer who also lives in Manhattan. In April 2008, Perez bought a folding knife from a Manhattan retailer, and he regularly used the knife to cut canvas and open packaging. On April 15, 2010, three police officers stopped Perez in a subway station when they observed the knife clipped to his pants pocket. One of the officers applied the wrist-flick test, and the knife fully opened to a locked position on the first attempt. Perez was arrested and charged with violating the gravity knife law. Perez did not contest the charge, accepted an adjournment in contemplation of dismissal, and agreed to perform seven days of community service.

7

Native Leather, Ltd. is a Manhattan-based retailer that sells folding knives. In 2010, investigators from the office of the New York County District Attorney ("D.A.") determined that some of Native Leather's knives could be opened with the wrist-flick test and issued a subpoena requiring Native Leather to produce any gravity knives in its inventory. Carol Walsh, the owner and president of Native Leather, produced over 300 knives that she thought were gravity knives. The D.A.'s office tested each knife, retained any that could be opened with the wrist-flick test at least one time in ten attempts, and returned the balance. On June 15, 2010, Native Leather entered a deferred prosecution agreement under which it agreed to test its inventory for gravity knives and to submit to inspections by an independent monitor. Walsh began testing Native Leather's knives in September 2010 and would not offer a knife for sale if she could flick it open or if she believed a "stocky man" would be able to. *Id.* at 244 (brackets omitted).

On September 24, 2012, Copeland, Perez, and Native Leather, along with Knife Rights, Inc. and Knife Rights Foundation, Inc., filed an amended complaint against defendants-appellees D.A. Cyrus R. Vance, Jr. and the City of New York challenging the gravity knife law as void for vagueness. Plaintiffs divide gravity

8

knives into two categories that are not recognized by the statute or case law, but are, they maintain, recognized by the knife industry: the "true gravity knife" and the "common folding knife." True gravity knives, in their view, can be opened by the force of gravity alone (although they also respond to the wrist-flick test). As the blade will slide freely out of the handle, this knife is said to lack a bias toward closure. Plaintiffs' paradigmatic true gravity knife is the formidable-sounding "German paratrooper knife." True gravity knives appear to be quite rare. Plaintiffs assert that no domestic manufacturer produces them, and multiple policer officers with significant experience enforcing the gravity knife law declared that they have never encountered one. Plaintiffs concede that true gravity knives can constitutionally be banned.

Plaintiffs' vagueness challenge focuses instead on common folding knives, which, they explain, are knives that are designed to have a bias toward closure. These knives resist opening. They cannot be opened by gravity alone; some additional force must be applied. This category includes folding knives openly sold and owned by many law-abiding people. It also includes the knives plaintiffs carried and sold in 2010. The plaintiffs wish to carry (and, in Native Leather's case, sell) common folding knives again, but claim that they cannot

9

determine which knives are legal. They seek a declaration that the gravity knife law is void for vagueness "as applied to Common Folding Knives" and an injunction restraining the defendants from enforcing the gravity knife law "as to Common Folding Knives." J. App'x 51–52.

On September 25, 2013, the district court dismissed the complaint for lack of standing. We affirmed as to the knife advocacy organizations, but held that Copeland, Perez, and Native Leather have standing. *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 379 (2d Cir. 2015). On remand, the district court conducted a bench trial and held an in-court knife demonstration. Following these proceedings, the district court, based on the findings of fact recounted above, rejected plaintiffs' vagueness claim. The district court concluded that the gravity knife law was constitutionally applied to Copeland, Perez, and Native Leather during the enforcement actions that took place in 2010 (the "2010 enforcement actions") and that it would continue to be constitutionally applied to them prospectively. The district court then concluded that, to the extent plaintiffs' claim could be understood as a facial attack on the gravity knife law, it was unsuccessful. This appeal followed.

10

DISCUSSION

## I.    Standard of Review

"On appeal from a bench trial, we review findings of fact for clear error and conclusions of law *de novo*." *Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*, 873 F.3d 85, 138 n.54 (2d Cir. 2017). "Under the clear error standard, factual findings by the district court will not be upset unless we are left with the definite and firm conviction that a mistake has been committed." *Id.* (brackets omitted) (quoting *Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 617 (2d Cir. 2006)).

## II.    Classifying Plaintiffs' Vagueness Challenge

The first issue on appeal is whether, as the district court held, plaintiffs have the burden to show that the gravity knife law was void for vagueness as applied to them in the 2010 enforcement actions. We conclude that they do.

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. A component of the Due Process Clause, "the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is

11

prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). In any vagueness case, then, the challenger can prevail by showing that the statute either "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or "authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000).

A party challenging a statute as void for vagueness must normally show that any prior enforcement action against the challenger was unconstitutional. That is the essence of an ordinary "as-applied" claim, in which the challenger asserts that a law cannot constitutionally be applied to the challenger's individual circumstances. The claim is typically that the statute provided insufficient notice that her conduct was illegal. *See, e.g.*, *Dickerson v. Napolitano*, 604 F.3d 732, 745 (2d Cir. 2010) ("A plaintiff making an as-applied challenge must show that the statute in question provided insufficient notice that his or her behavior at issue was prohibited."). As-applied challenges are often raised as defenses to individual prosecutions. *See, e.g.*, *United States v. Nadi*, 996 F.2d 548 (2d Cir. 1993).

12

A statute may also be challenged as vague "on its face." The claim in a facial challenge is that a statute is so fatally indefinite that it cannot constitutionally be applied to anyone. A facial challenge is "the most difficult challenge to mount successfully" because, as a general matter, "the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987); *accord Hoffman Estates v. Flipside*, 455 U.S. 489, 495 (1982) (explaining that an ordinary facial challenge will succeed "only if the enactment is impermissibly vague in all of its applications").[2]

Because this standard is so comprehensive, a facial challenger must show that every prior enforcement action against her was unconstitutional. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 18–19 (2010) ("We consider whether a statute is vague as applied to the particular facts at issue, for '[a] plaintiff who

---

[2] These general principles are more flexible in vagueness cases involving the First Amendment or fundamental rights. *See Farrell v. Burke*, 449 F.3d 470, 496 (2d Cir. 2006). In addition, in certain exceptional circumstances not present here, a criminal statute may be struck down as facially vague even where it has some valid applications. *See Johnson v. United States*, 135 S. Ct. 2551, 2557–60 (2015) (invalidating provision that required courts to imagine an ordinary version of a crime and assess whether such idealized conduct implied some degree of risk); *Sessions v. Dimaya*, 138 S. Ct. 1204, 1213–16 (2018) (same).

engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'" (quoting *Flipside*, 455 U.S. at 495)). If a court concludes that a statute was constitutionally applied to a facial challenger, then it generally need not consider the statute's applicability in other situations. *See Diaz v. Paterson*, 547 F.3d 88, 101 (2d Cir. 2008) ("Because plaintiffs have failed to plead facts establishing that Article 65 is unconstitutional as applied to them, they necessarily fail to state a facial challenge . . . ."). Facial claims are "disfavored" because they "often rest on speculation," flout the "fundamental principle of judicial restraint" that courts should avoid unnecessary constitutional adjudication, *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008), and "threaten to short circuit the democratic process," *id.* at 451.

Not all proponents of a vagueness challenge must show the infirmity of a prior enforcement action, however. A statute can be attacked as vague before it has been enforced against the challenger, *see, e.g., N.Y. State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 265 (2d Cir. 2015), and a party asserting a pre-enforcement challenge obviously cannot be required to show that a prior action was invalid. And although the matter is not entirely settled, the proponent of a facial

14

vagueness claim may not need to show that a statute was unconstitutionally applied to the challenger if the statute "reaches 'a substantial amount of constitutionally protected conduct,'" particularly rights protected by the First Amendment. *Kolender*, 461 U.S. at 358–59 n.8 (quoting *Flipside*, 455 U.S. at 494); *accord City of Chicago v. Morales*, 527 U.S. 41, 60–64 (1999) (facially invalidating a city ordinance without examining whether it was unconstitutionally applied to the challengers); *Farrell*, 449 F.3d at 496 (explaining that "[w]hen fundamental rights are implicated," a defendant to whom a statute was constitutionally applied may nonetheless "'raise its vagueness . . . as applied to others'" (quoting *Coates v. City of Cincinnati*, 402 U.S. 611, 620 (1971))). Neither of these principles has any application here. As recounted above, the gravity knife law was previously enforced against each of the three plaintiffs, and no claim is made that the statute infringes fundamental rights.

Plaintiffs instead argue that they need not show that the 2010 enforcement actions were unconstitutional because they bring an as-applied challenge that seeks only prospective relief. According to the plaintiffs, they need not prove that the 2010 enforcement actions were unconstitutional because they do not seek any relief from those proceedings (such as, for example, nullification of Native

15

Leather's deferred prosecution agreement). They instead seek prospective relief that would allow them to own folding knives without fear of future prosecution under the gravity knife law.

Courts consider prospective, as-applied vagueness challenges comparatively infrequently. Unlike the ordinary as-applied challenge, where the claim is that a prior enforcement action was invalid, a prospective as-applied challenge seeks to prove that a statute cannot constitutionally be applied to a specific course of conduct that the challenger intends to follow. A recent Supreme Court case is instructive. In *Expressions Hair Design v. Schneiderman*, the Supreme Court considered a vagueness challenge to New York's credit card surcharge ban, which provides that "[n]o seller in any sales transaction may impose a surcharge on a holder who elects to use a credit card in lieu of payment by cash, check, or similar means." 137 S. Ct. 1144, 1147 (2017) (quoting N.Y. Gen. Bus. Law § 518). The statute had been enforced only rarely, *see id.* at 1154 n.2 (Sotomayor, *J.*, concurring in the judgment), and never against the plaintiffs. Before the Supreme Court, the plaintiffs argued that this law would be unconstitutional if applied to a single scheme of pricing they wished to employ: "posting a cash price and an additional credit card surcharge." *Id.* at 1149. The

16

Court framed this as an "as-applied challenge" of "narrow scope," *id.* at 1149 n.1, and, concluding that "it is at least clear that § 518 proscribes *their* intended speech," rejected the vagueness challenge, *id.* at 1152 (emphasis added).

We agree in principle that someone who intends to engage in a course of conduct that differs from the conduct that gave rise to a prior enforcement action against her should be relieved of the burden to show that the prior proceeding was invalid. That a statute was lawfully applied to one set of facts does not necessarily prove that it may lawfully be applied to a different set of facts. More concretely, we think that someone previously convicted for carrying what is indisputably a gravity knife should be permitted to claim that the gravity knife law cannot lawfully be applied to a different knife that she intends to carry and that responds differently to the wrist-flick test.

But plaintiffs have not asserted a prospective, as-applied challenge. Unlike the "narrow" challenge to New York's credit card surcharge ban, *id.* at 1149 n.1, the claim here is for exceedingly broad relief—indeed, so broad that plaintiffs concede it could be seen a species of facial challenge. Plaintiffs seek, not a declaration that the statute cannot be applied to certain knives they wish to personally carry, but a declaration that the statute cannot constitutionally be

17

applied to *anyone* carrying *any* knife in the very large "common folding knife" category. The evidence shows that the gravity knife law has for decades been enforced mainly, and perhaps exclusively, against such knives. As a consequence, and as plaintiffs conceded at oral argument, their vagueness challenge would, if successful, disable the entire statute. The challenge thus more resembles a facial challenge than an as-applied challenge.

Plaintiffs' manner of proof also shows that their claim is not a prospective as-applied challenge, but a challenge to the gravity knife law on its face. A party asserting a prospective as-applied challenge must tailor the proof to the specific conduct that she would pursue but for fear of future enforcement. *See VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179, 189 (2d Cir. 2010) ("[I]n the context of an as-applied vagueness challenge, a court's analysis should be confined to the litigant's *actual* conduct, and a court should not analyze whether a reasonable person would understand that certain hypothetical conduct or situations violate the statute."). The challenger cannot instead rely on hypothetical situations in which the statute could not validly be applied. In *Expressions Hair Design*, for example, the plaintiffs offered a "wide array of hypothetical pricing regimes,"

but the Supreme Court "limit[ed] . . . review" to the "one pricing scheme [plaintiffs sought] to employ." 137 S. Ct. at 1149.

If this were a true prospective as-applied challenge, we would therefore expect plaintiffs to have offered proof that specific knives they wished to possess responded inconsistently, if at all, to the wrist-flick test. They did not. Plaintiffs instead seek to show that the gravity knife law is vague by positing hypothetical unfair enforcement actions in which the statute could not be constitutionally applied. For example, they invite us to consider the prosecution of someone who, after attempting to flick open a knife several times, concludes that it is legal and purchases it, only to be immediately stopped by an officer who succeeds in flicking it open. This type of "proof" is simply not cognizable in an as-applied challenge. *See id.* It may, however, be entertained in a facial challenge. *See Farrell*, 449 F.3d at 496.

To be sure, plaintiffs label their challenge "as applied," and, in a bid to avoid the rule that a statute is not vague on its face unless it is vague in all applications, disclaim a full-fledged facial challenge. But plaintiffs use the term "as applied" in an idiosyncratic way. They do not mean that the statute cannot lawfully be applied to their personal facts and circumstances, but that the statute

19

cannot lawfully be applied to a broad class of knives that could be carried by anyone. *Cf. Dickerson*, 604 F.3d at 745 ("To successfully make an as-applied vagueness challenge, the plaintiffs must show that section 14–107 either failed to provide *them* with notice that possession of their badges was prohibited or failed to limit sufficiently the discretion of the officers who arrested *them* under the statute."). The sweeping relief sought and the method of proof advanced persuade us that this is a facial challenge.

And so we reject plaintiffs' contention that they need not show that the gravity knife law was unconstitutionally applied to them in 2010. As plaintiffs conceded below, in an ordinary facial vagueness claim, the challenger must show that the statute is invalid in all respects. *See Salerno*, 481 U.S. at 745. When the enactment has been previously applied to a facial challenger, a court should first evaluate the claim as applied to the challenger's facts and circumstances, *see Rubin v. Garvin*, 544 F.3d 461, 468–69 (2d Cir. 2008), and if the statute was constitutionally applied to the challenger, then the vagueness claim fails, *see Flipside*, 455 U.S. at 494–95; *Diaz*, 547 F.3d at 101. Accordingly, plaintiffs can

20

prevail on their vagueness claim only if they show that the statute was vague as applied to them in the 2010 enforcement actions.[3]

## III.    Whether the Gravity Knife Law Was Constitutionally Enforced Against the Plaintiffs

The district court held that the plaintiffs did not show that the gravity knife statute was unconstitutionally applied to them in 2010. On appeal, plaintiffs do little to directly confront this holding, relying primarily on more general contentions that the statute provides insufficient notice of which knives are legal. We conclude that the gravity knife law was constitutionally enforced against at least one of the plaintiffs in 2010.[4]

---

[3] Plaintiffs, relying on *Dimaya*, 138 S. Ct. 1204, decided after this appeal was heard, argue that a statute must be clear in all its applications to survive a vagueness challenge. This gets the rule backward. Under a long line of decisions that *Dimaya* did not disturb, a statute will generally survive a facial challenge so long as it is not *invalid* in all its applications. *See, e.g.*, *Salerno*, 481 U.S. at 745; *Flipside*, 455 U.S. at 494–95. That is the rule we apply here.

[4] We observe that the defendants do not argue that plaintiffs' concession that the statute can validly be applied to true gravity knives dooms their entire claim. *Cf. N.Y. State Rifle & Pistol Ass'n*, 804 F.3d at 265 ("[T]o succeed on a facial challenge, the challenger must establish that *no set of circumstances* exists under which the Act would be valid." (internal quotation marks omitted)). Defendants instead meet plaintiffs' vagueness challenge as advanced. We take the same approach here.

## A.    The Void for Vagueness Doctrine

As noted above, "[a] statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill*, 530 U.S. at 732. "The degree of vagueness that the Constitution tolerates . . . depends in part on the nature of the enactment." *Betancourt v. Bloomberg*, 448 F.3d 547, 552 (2d Cir. 2006) (quoting *Flipside*, 455 U.S. at 498). Here, because the gravity knife law is a criminal statute that is not claimed to inhibit the exercise of constitutional rights, "only a moderately stringent vagueness test [is] required." *Id.* at 553.

Whether a statute is unconstitutionally vague is an "objective" inquiry in which we must determine "whether the law presents an ordinary person with sufficient notice of or the opportunity to understand what conduct is prohibited or proscribed, not whether a particular plaintiff actually received a warning that alerted him or her to the danger of being held to account for the behavior in question." *Dickerson*, 604 F.3d at 745–46 (internal quotation marks and citation omitted). "What renders a statute vague is not the possibility that it will

22

sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *United States v. Williams*, 553 U.S. 285, 306 (2008). In other words, a statute is fatally vague if it "proscribe[s] no comprehensible course of conduct at all." *United States v. Powell*, 423 U.S. 87, 92 (1975). "In reviewing a statute's language for vagueness, 'we are relegated . . . to the words of the ordinance itself, to the interpretations the court below has given to analogous statutes, and perhaps to some degree, to the interpretation of the statute given by those charged with enforcing it.'" *VIP of Berlin*, 593 F.3d at 186 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972)).

**B.  Whether an Ordinary Person Had Notice that Plaintiffs' Knives Were Banned**

Although arbitrary enforcement is "the more important aspect of vagueness doctrine," *Kolender*, 461 U.S. at 358, we understand plaintiffs to focus on the notice element. Plaintiffs argue that the gravity knife law provides constitutionally insufficient notice of which common folding knives are proscribed for three reasons: (i) the defendants allegedly began to enforce the gravity knife law in a novel and unprecedented way in 2010, (ii) the wrist-flick

test does not appear in the text of the gravity knife law, and (iii) members of the public allegedly have no way to reliably determine which knives may lawfully be possessed. Finding none of these contentions persuasive, we conclude that the gravity knife law provided constitutionally sufficient notice that at least one of the plaintiffs' knives was unlawful to possess.

Plaintiffs first argue that notice is wanting because the defendants in 2010 unexpectedly began to apply the statute to common folding knives that could be opened with the wrist-flick test. This argument is meritless. The record shows that the gravity knife law has been enforced against individuals who possess folding knives for decades prior to 2010 and that the wrist-flick test has been the diagnostic tool for separating legal knives from illegal ones. Indeed, a booster of the gravity knife law reportedly opened a knife with a flick of the wrist (rather than the force of gravity) to demonstrate the dangers of gravity knives *in 1957*.[5] More to the point, the district court found, based on unchallenged testimony

---

[5] Emma Harrison, *Group Seeks Ban on Gravity Knife*, N.Y. TIMES, Dec. 19, 1957 ("Judge Cone selected a sleek, silverish object from weapons that the committee had on display. He flicked his wrist sharply downward and the long blade shot forth and anchored firmly in position. 'You see,' he said, 'the blade leaps out with a flip of the wrist and circumvents the law on switchblade knives.'").

from officers with decades of experience enforcing the gravity knife law against folding knives, that defendants have consistently used the wrist-flick test to identify illegal folding knives since the ban was enacted.

Plaintiffs also contend that an ordinary person would not understand that the statutory phrase "application of centrifugal force," N.Y. Penal Law § 265.00(5), refers to the wrist-flick test. But in evaluating a vagueness claim, we consider not only the text of the statute, but also any judicial constructions, *see VIP of Berlin*, 593 F.3d at 186, and the courts of New York State have long upheld the application of the gravity knife law to common folding knives via the wrist-flick test. State trial courts have accepted the wrist-flick test as the measure of banned gravity knives since at least the 1980s. *See, e.g.*, *People v. Hawkins*, 781 N.Y.S.2d 627 (Table), 2003 WL 23100899, at *1 (N.Y. Crim. Ct. 2003) (upholding complaint alleging that a knife "opened and locked when flipped"); *People v. Dolson*, 538 N.Y.S.2d 393, 394 (N.Y. Co. Ct. 1989) (stating that a knife "appears to meet the first part of the statutory definition of a gravity knife" because its "blade can . . . be released from its sheath by a flick of the wrist"). And although it appears that state appellate courts expressly approved of reliance on the wrist-flick test to prove that a knife met the statutory definition only after some of the

25

2010 enforcement actions had concluded,[6] they had required proof of "operability" for significantly longer. *See, e.g.*, *People v. Smith*, 765 N.Y.S.2d 777 (1st Dep't 2003) (finding evidence sufficient where "[a] detective twice demonstrated the operability of the weapon in open court"); *People v. Mashaw*, 411 N.Y.S.2d 455, 456 (3d Dep't 1978) (vacating conviction where operability not established). Given the holdings of the state trial courts recited above, we think it fair to infer that these convictions likewise turned on the results of the wrist-flick test. And in conjunction with the evidence that defendants have consistently used the wrist-flick test to identify illegal gravity knives since long before 2010, this judicial authority is sufficient to have given an ordinary person notice that folding knives that may be opened with a one-handed flick of the wrist are banned by the gravity knife law. *See VIP of Berlin*, 593 F.3d at 186–87.

Plaintiffs' more substantial arguments concern the purported indeterminacy of the wrist-flick test. They argue that even if an ordinary person

---

[6] *See People v. Herbin*, 927 N.Y.S.2d 54, 55–56 (1st Dep't 2011) (finding the evidence sufficient to sustain a gravity knife conviction where "officers release[d] the blade simply by flicking the knife with their wrists"); *Neal*, 913 N.Y.S.2d at 194 (similar); *cf. Parrilla*, 27 N.Y.3d at 402 (reciting that an officer "tested the knife to determine whether it was a gravity knife by flicking his wrist with a downward motion").

had sufficient notice that the wrist-flick test is the measure of illegality under the gravity knife law, there is nonetheless no way to reliably identify legal folding knives. This uncertainty, they claim, is a result of two features of the wrist-flick test. First, the test only confirms illegality. A positive result is strong evidence that the knife is illegal, but, because a knife need not always positively respond to the wrist-flick test to be a gravity knife, *see People v. Cabrera*, 22 N.Y.S.3d 418, 420 (1st Dep't 2016), a negative test is inconclusive. Second, the results of the wrist-flick test may vary depending on the tester's skill, practice, and physical traits. One person may be able to successfully flick open a knife that another person cannot. And because guilt turns on whether a law enforcement officer can flick open a knife, not whether the knife owner can, even an individual familiar with the wrist-flick test can never completely assure herself that a folding knife is legal.

To the extent plaintiffs argue that the gravity knife law is unconstitutional because the wrist-flick test only measures illegality, the argument must be rejected. Legislatures may functionally define crimes. *See Powell*, 423 U.S. at 88, 93–94 (rejecting vagueness challenge to statute prohibiting the mailing of firearms "capable of being concealed on the person" (quoting 18 U.S.C. § 1715));

*cf. Vrljicak v. Holder*, 700 F.3d 1060, 1062 (7th Cir. 2012) ("[J]ust because it is *possible* to replace a standard with a numeric rule, the Constitution does not render the standard a forbidden choice."). A legislature that does so need not simultaneously create a safe harbor from prosecution, as plaintiffs seem to seek. In *Powell*, for example, the Supreme Court sustained a proscription on the mailing of concealable firearms without so much as suggesting that there must be some second test to determine when a firearm cannot be concealed. *See* 423 U.S. at 88, 93–94. A functional definition, without more, does not offend the Constitution.

Yet *Powell* does not entirely answer plaintiffs' contention that the wrist-flick test's potential to yield variable results creates serious notice problems. In *Powell*, the Supreme Court had an intermediate option to invalidating the statute on constitutional grounds: imposing a limiting construction. Powell argued that the statute was vague because it did not specify whether the term "person" in the phrase "capable of being concealed on the person" referred to the person mailing the gun, the person receiving it, or a hypothetical average person. *See id.* at 88 (quoting 18 U.S.C. § 1715). The Supreme Court construed "person" to mean to mean "an average person garbed in a manner to aid, rather than hinder,

28

concealment of the weapons" and held that, so interpreted, the statute was not unconstitutionally vague. *Id.* at 93.

Because the gravity knife law is a state statute, we must defer to the interpretation given to it by the state courts. *See Morales*, 527 U.S. at 61; *see also Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 199–200 (2d Cir. 2005) ("[W]e are generally obliged to follow the state law decisions of state intermediate appellate courts."). We are aware of no state court decision that has imposed a limiting construction on the gravity knife law of the sort imposed in *Powell*. That is to say, no state court has held that, for example, a knife is a gravity knife only if a person of average skill or practice can open it.[7] And the state courts have held that a

---

[7] Plaintiffs argue that the New York Court of Appeals has held that the gravity knife law reaches only those knives that "readily" respond to the wrist-flick test. *People v. Dreyden*, 15 N.Y.3d 100, 104 (2010) (stating that the gravity knife law "distinguishes gravity knives from certain folding knives that cannot readily be opened by gravity or centrifugal force"). We are not so sure. *Dreyden* held only that a criminal complaint must include facts sufficient to give the defendant notice of the charges against him, *see id.*, and its description of the underlying statute more resembles dicta than statutory construction. This reading is bolstered by a later decision upholding an accusatory instrument containing the bare allegation that a gravity knife opened "with centrifugal force." *People v. Sans*, 26 N.Y.3d 13, 17 (2015). In any event, plaintiffs' reading of *Dreyden* would undercut their vagueness claim. After all, a rule that the gravity knife law only reaches knives that readily respond to the wrist-flick test would *enhance* the public's notice of which knives were proscribed and would do much to answer plaintiffs' complaint that the wrist-flick test is indeterminate.

knife can be a gravity knife even if it does not always respond positively to the wrist-flick test. *See Cabrera*, 22 N.Y.S.3d at 420 ("The fact that the officer needed to make several attempts before the knife opened did not undermine a finding of operability."); *Smith*, 765 N.Y.S.2d 777 (similar). Given this statutory framework, we think that there are circumstances in which an as-applied challenge to a gravity knife conviction might succeed. For example, a gravity knife conviction might be constitutionally infirm if the knife could be flicked open to a locked position only with great difficulty or by a person with highly unusual abilities. A knife that responds inconsistently to the wrist-flick test might also provide grounds to challenge the law on an as-applied basis. To take an extreme case, an ordinary person would lack "sufficient notice . . . or the opportunity to understand" that the gravity knife law bans a knife that can only be successfully flicked open once in twenty attempts. *Dickerson*, 604 F.3d at 746.[8]

---

[8] Plaintiffs also invoke the possibility of a knife loosening over time, as apparently happened to Copeland's knife. For the reasons discussed below, it is unnecessary for us to decide whether Copeland had constitutionally sufficient notice that his knife was unlawful to possess. Accordingly, we do not resolve whether a future defendant to an enforcement action presenting similar facts may successfully contest her prosecution on an as-applied basis.

But we must evaluate plaintiffs' notice argument as applied to the plaintiffs' facts and circumstances and not in the abstract. *See VIP of Berlin*, 593 F.3d at 189–90. We therefore consider whether the plaintiffs have shown "that the statute in question provided insufficient notice that his or her behavior at issue"—here, possession of the knives that formed the subject of the 2010 enforcement actions—"was prohibited." *Dickerson*, 604 F.3d at 745. And because a facial challenger must show that "no set of circumstances exists under which the Act would be valid," *Salerno*, 481 U.S. at 745, plaintiffs' claim will fail if the gravity knife law was constitutionally applied to even one of the knives that formed the subject of the 2010 enforcement actions.

We conclude that Native Leather did not make this showing. As a seller of knives, Native Leather was responsible for ensuring that its merchandise was legal, and it possessed more resources and sophistication to make that judgment than someone who uses a knife in her trade. *See Flipside*, 455 U.S. at 498 (observing that "businesses, which face economic demands to plan behavior carefully, can be expected to consult the relevant legislation in advance of action" and "may have the ability to clarify the meaning of regulation by its own inquiry"). Yet prior to receiving the gravity knife subpoena in 2010, Walsh made

31

no meaningful effort to verify that Native Leather's knives did not respond to the wrist-flick test. And in responding to the subpoena, Native Leather produced more than 300 knives that Walsh simply guessed might be banned by the statute.

Native Leather's lack of diligence significantly limits its ability to show that the statute provided insufficient notice that it sold banned knives, because it prevents it from offering evidence that the knives had responded differently to the wrist-flick test prior to the D.A.'s tests. Evidence that Native Leather had scrupulously tested the seized knives and found that they did not respond to the wrist-flick test would certainly have been relevant to its notice argument. Native Leather also made no showing that, for example, the government's testers had any unusual skill, or that the government retained any knives that responded but poorly (if at all) to the wrist-flick test. In sum, Native Leather offered no evidence that *any* of its seized knives responded inconsistently to the wrist-flick test, much less that *all* of them did, as the demanding standard for facial challenges requires. *See id.* at 494–95. Accordingly, Native Leather has not shown that it lacked "sufficient notice . . . or the opportunity to understand" that it sold illegal gravity knives. *Dickerson*, 604 F.3d at 745.

Native Leather makes much of the fact that the investigators arrived at the one-in-ten failure rate on the day they began to test its inventory, but it points to no evidence that any of the knives retained by the defendants in fact responded to the wrist-flick test at such a dismal rate. We therefore need not consider whether applying the gravity knife law to such a knife raises any notice concerns. Native Leather also protests that Walsh and employees of the independent monitor occasionally had different results when testing its knives with the wrist-flick test. However, the record as to any variation in the outcomes of the wrist-flick test is sparse, and thus it is not apparent to us precisely how these knives responded. In any event, although inconsistent results might give rise to notice concerns, minor variation in the application of the wrist-flick test only suggests that the gravity knife law—like most laws—can give rise to close cases, and "[t]he problem that poses is addressed, not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt." *Williams*, 553 U.S. at 306.

Plaintiffs also place great weight on the results of the in-court knife demonstration, which, they claim, shows that the wrist-flick test produces divergent results. However, we find no clear error in the district court's decision to credit a prosecutor's testimony that one of the demonstrators used an

33

exaggerated technique that did not resemble the wrist-flick test used by law

enforcement or prosecutors in New York City. More importantly, the

demonstration did not involve the knives that Native Leather produced for

testing in 2010, and therefore tells us nothing about whether Native Leather's

*own* knives had some characteristics that rendered the application of the gravity

knife law unconstitutional.

Plaintiffs also rely on two trial court decisions that declined to apply the

gravity knife law to folding knives out of concern that the law would reach

seemingly innocent conduct. *See United States v. Irizarry*, 509 F. Supp. 2d 198, 210

(E.D.N.Y. 2007) (suppressing a "folding lock-back utility kni[fe]" that responded

to the wrist-flick test because the gravity knife law only covers "items . . .

manufactured as weapons"); *People v. Trowells*, No. 3015/2013, at *6 (N.Y. Sup. Ct.

July 11, 2014) (dismissing gravity knife complaint "in the furtherance of justice"

because of the perceived unfairness of enforcing the statute against people who

possessed seemingly legal tools). These decisions do not alter our conclusion.

*Irizarry*'s design-based interpretation of the gravity knife law has not been

adopted by the state courts, *see Herbin*, 927 N.Y.S.2d at 55, and *Trowells*'

discretionary dismissal has no relevance to the issues before us. It remains the

34

case that it was well-established in 2010 that the wrist-flick test provided the measure of guilt, and that there is no evidence that Native Leather's knives responded inconsistently to the wrist-flick test.

We thus conclude that the gravity knife law provided constitutionally sufficient notice that Native Leather's knives were illegal. As a result, we need not decide whether the gravity knife law provided adequate notice that the individual plaintiffs' knives were banned, and we express no view as to those cases. *See Flipside*, 455 U.S. at 494–95.

### C. Whether the Gravity Knife Law Provides Adequate Standards to Law Enforcement

We next consider whether the gravity knife law satisfies "the requirement that a legislature establish minimal guidelines to govern law enforcement." *Kolender*, 461 U.S. at 358.

> Courts considering as-applied vagueness challenges may determine either (1) that a statute as a general matter provides sufficiently clear standards to eliminate the risk of arbitrary enforcement or (2) that, even in the absence of such standards, the conduct at issue falls within the core of the statute's prohibition, so that the enforcement before the court was not the result of the unfettered latitude that law enforcement officers and factfinders might have in other, hypothetical applications of the statute.

*Farrell*, 449 F.3d at 494. Curiously, we understand the plaintiffs not to raise any

arbitrary enforcement arguments distinct from their core notice argument. In

other words, there is no discrete contention that the gravity knife law "authorizes

or even encourages arbitrary and discriminatory enforcement," *Hill*, 530 U.S. at

732; plaintiffs' basic argument is that the statute is void for vagueness because

the *public* cannot reliably identify legal folding knives with the wrist-flick test. To

the extent this contention can be understood as a complaint about arbitrary

enforcement, it fails for the same reason their notice argument fails: Native

Leather did not show that the seized knives responded inconsistently to the

wrist-flick test. Native Leather's misconduct therefore fell "within the core of the

statute's prohibition," and we need not consider whether the statute provides

sufficient guidance as a general matter. *Farrell*, 449 F.3d at 494; *accord VIP of*

*Berlin*, 593 F.3d at 191–92 ("For the same reasons that it gave VIP adequate notice

regarding its March 2009 application, the language here . . . does not encourage

or authorize arbitrary enforcement.").

    *Amici curiae* separately attempt to show that the gravity knife law invited

arbitrary enforcement with evidence that the defendants have exempted certain

36

prominent retailers from aspects of the law. Citing five recent cases in which

defendants received substantial prison sentences for possession of a gravity

knife, they further contend that the defendants use the statute as a tool to harass

"those they deem undesirable." Br. of *Amici Curiae* Legal Aid Society at 7.

Defendants, for their part, provide no meaningful account of why banned

gravity knives continue to be widely available in New York City retailers, and

respond to the discriminatory enforcement contention by pointing out that the

plaintiffs in this case have a "spotless pedigree." D.A. Br. 46 n.35.

We are troubled by these signs that the defendants selectively enforce the

gravity knife law and are not entirely satisfied by the defendants' responses. But

a pattern of discriminatory enforcement, without more, would not show that the

statute is unconstitutionally vague. What makes a statute unconstitutionally

vague is that the statute, as drafted by the legislature and interpreted by the

courts, *invites* arbitrary enforcement. *See Kolender*, 461 U.S. at 360–61. The test is

whether some element of the statute turns on the law enforcement officer's

unguided and subjective judgment. Thus, the Supreme Court has invalidated

ordinances whose elements included acting in an "annoying" manner, *Coates*,

402 U.S. at 611, 614–16, and remaining in place without an "apparent purpose,"

37

*Morales*, 527 U.S. at 60–64. Such terms are so devoid of objective content that any enforcement decision necessarily devolves upon an individual law enforcement officer's whim.

Whatever flaws infect the gravity knife law, a totally subjective element is not among them. The gravity knife law has an objective "incriminating fact": either the knife flicks open to a locked position or it does not. *See Williams*, 553 U.S. at 306. In the ordinary case, a law enforcement officer is simply not called upon to make a subjective judgment about whether the criterion of guilt is present. The gravity knife law therefore does not "authorize[] or even encourage[] arbitrary and discriminatory enforcement." *Hill*, 530 U.S. at 732.

This is not to say that defendants' enforcement priorities are immune from scrutiny. It has long been the law that selective enforcement of a facially neutral statute can violate the Equal Protection Clause of the Fourteenth Amendment. *See United States v. Armstrong*, 517 U.S. 456, 464–65 (1996) ("A defendant may demonstrate that the administration of a criminal law is 'directed so exclusively against a particular class of persons with a mind so unequal and oppressive' that the system of prosecution amounts to 'a practical denial' of equal protection of the law." (ellipsis omitted) (quoting *Yick Wo v. Hopkins*, 118 U.S. 356, 373 (1886))).

38

Evidence that the defendants target certain classes of people over others, or certain types of retailers over others, would certainly be relevant to an equal protection claim. However, because plaintiffs only advance a vagueness claim, we express no view on whether the defendants' enforcement priorities are consistent with the Equal Protection Clause. We merely hold that they do not prove that the statute was unlawfully enforced against the plaintiffs.

* * *

For the foregoing reasons, we conclude that at least one plaintiff did not show that the gravity knife law was unconstitutionally vague as applied to it in a prior proceeding. That alone requires us to reject plaintiffs' facial challenge. *See Diaz*, 547 F.3d at 101. Yet even if we were persuaded that the gravity knife law was unconstitutionally applied to each of the three plaintiffs, the facial vagueness claim would not succeed. As noted above, an ordinary facial challenge is, by design, "the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *Salerno*, 481 U.S. at 745. Even setting aside plaintiffs' own knives, we do not think plaintiffs have met this burden. Plaintiffs acknowledge, for example, that some common folding knives may have a "very light bias toward closure,"

with a blade that fits only "loose[ly]" in the handle, Reply Br. at 25, but they make no effort to explain why an ordinary person would lack notice that such a knife was proscribed by the gravity knife law. This is to say nothing of plaintiffs' outright concession that the gravity knife law can lawfully be applied to "true gravity knives." Because plaintiffs have not satisfied the demanding *Salerno* standard, their facial challenge to the gravity knife law fails.

## IV.   Whether the Gravity Knife Law Unconstitutionally Imposes Strict Liability

Finally, *amici curiae* argue that the gravity knife law is unconstitutional because it imposes strict liability on possession of an everyday item and because possession of a gravity knife can, in some circumstances, be charged as a felony. *See Parrilla*, 27 N.Y.3d at 404 & n.2. It is undisputed that the gravity knife law is a strict liability statute in the relevant sense, as knowledge that a knife positively responds to the wrist-flick test is not required for a conviction. *See id.* at 402 ("[T]he *mens rea* prescribed by the legislature for criminal possession of a gravity knife simply requires a defendant's knowing possession of a knife, not knowledge that the knife meets the statutory definition of a gravity knife."). Because many common folding knives can evidently be opened with a one-

40

handed flick of the wrist, many people may be unknowingly violating a statute that can result in several years' imprisonment. *Amici*'s argument that this violates the Constitution can be understood in two ways. We conclude that neither is persuasive.

*Amici* may be arguing that the lack of a *mens rea* merely exacerbates the statute's vagueness problems. To be sure, "[a] scienter requirement may mitigate a law's vagueness, especially where the defendant alleges inadequate notice," *Rubin*, 544 F.3d at 467 (citing *Flipside*, 455 U.S. at 499), and we have no doubt that a scienter requirement would remedy many of plaintiffs' complaints about the gravity knife law. But the absence of a scienter element, without more, does not make a law unconstitutionally vague; the inquiry remains whether the statute gives adequate notice to the public and provides sufficient guidance to those charged with enforcing it. *See Hill*, 530 U.S. at 732. For the reasons stated above, we conclude that the gravity knife law was constitutionally applied to at least one plaintiff in 2010 and that plaintiffs' facial challenge accordingly fails.

*Amici* might also be understood to argue that, independent of the vagueness claim, the statute's lack of a *mens rea* itself violates the Due Process Clause. Whether the Constitution sometimes requires criminal statutes to have a

41

*mens rea* is unsettled.[9] Criminal intent is, of course, foundational to our system of law. *See Morissette v. United States*, 342 U.S. 246, 250 (1952) ("The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil."). Its importance at common law informs a presumption in favor of inferring a *mens rea* requirement into a statute that omits one. *See Staples v. United States*, 511 U.S. 600, 605–06 (1994).

But the Supreme Court has been at pains not to constitutionalize *mens rea*. *See, e.g.*, *Smith v. California*, 361 U.S. 147, 150 (1959) ("[I]t is doubtless competent for the States to create strict criminal liabilities by defining criminal offenses without any element of scienter . . . ."); *United States v. Balint*, 258 U.S. 250, 252 (1922) ("[I]n the prohibition or punishment of particular acts, the State may in the maintenance of a public policy provide that he who shall do them shall do them at his peril and will not be heard to plead in defense good faith or ignorance."

---

[9] And has been for some time. In 1962, one commentator summarized the constitutional status of *mens rea* with the quip "[m]ens rea is an important requirement, but it is not a constitutional requirement, except sometimes." Herbert L. Packer, *Mens Rea and the Supreme Court*, 1962 Sup. Ct. Rev. 107, 107 (1962).

(internal quotation marks omitted)). In particular, the Supreme Court has never held that a strict liability possession statute violates the Due Process Clause. At most, it has suggested in dicta that a legislature might be unable to create a strict liability ban on indisputably harmless and everyday items. *See United States v. Int'l Minerals & Chem. Corp.*, 402 U.S. 558, 564 (1971) (stating that a strict liability ban on "[p]encils, dental floss, [and] paper clips" "might raise substantial due process questions"). Assuming *arguendo* that *International Minerals* accurately locates the constitutional line, the gravity knife law falls comfortably on the safe side of it. A knife is not a paper clip.

*Amici*'s argument to the contrary relies chiefly on cases interpreting federal statutes. These decisions teach that a court should infer a *mens rea* requirement into federal statutes that forbid possession of "apparently innocent," even if "potentially harmful," devices, including ones as destructive as machine guns. *Staples*, 511 U.S. at 610, 611. *Amici* seem to suggest that we should adopt the statutory rule as the constitutional rule, if only because it is readily at hand. We reject this invitation. The Supreme Court has long been careful to frame its *mens rea* holdings as matters of statutory interpretation. Indeed, *Staples* itself notes that Congress "remains free to amend [the statute] by explicitly eliminating a *mens rea*

43

requirement." *Id.* at 615–16 n.11. As the Court has no more than sketched a possible outer constitutional limit that lies well beyond the gravity knife law, *see Int'l Minerals*, 402 U.S. at 564–65, we reject the due process argument.

CONCLUSION

Although we conclude that plaintiffs' facial challenge to the gravity knife law is unsuccessful, we note that legitimate questions have been raised about the statute's implementation. The statute's reliance on a functional test and imposition of strict liability on what can be a common, if dangerous, household tool might in some instances "trap the innocent by not providing fair warning." *Grayned*, 408 U.S. at 108. And while the plaintiffs did not show that the statute invites arbitrary enforcement as that term is used in the vagueness doctrine, *see Morales*, 527 U.S. at 60–64, the sheer number of people who carry folding knives that might or might not respond to the wrist-flick test raises concern about selective enforcement.

For these reasons, we believe that the legislative and executive branches may wish to give further attention to the gravity knife law. Heeding the Supreme Court's admonition that facial challenges are disfavored because they "threaten

to short circuit the democratic process," *Wash. State Grange*, 552 U.S. at 451, we

must stay our hand and defer to New York's political branches.

The judgment of the district court is **AFFIRMED**.